IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BERTHA KEYLON,

    Plaintiff,

vs.                                            Civ. No. 04-1303 JP/RLP

CITY OF ALBUQUERQUE, MARTIN
CHAVEZ, in his individual capacity as mayor
of the City of Albuquerque, GIL GALLEGOS,
in his individual capacity as chief of police of the
City of Albuquerque Police Department, DAVID
SEDILLO and S. BARNARD, City of Albuquerque
Police Officers,

    Defendants.

## MEMORANDUM OPINION AND ORDER

On November 14, 2005, the Plaintiff filed Plaintiff's Motion and Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment Against Defendants Barnard and Sedillo on Count II of Plaintiff's Complaint to Recover Damages Due to Deprivation of Civil Rights and the New Mexico Tort Claims Act (Doc. No. 21). Having considered the briefs and relevant law, the Court finds that Plaintiff's motion for summary judgment should be denied.

A. Background

On September 28, 2003, Mr. Valdez, a tow trucker, was attempting to repossess a vehicle from one of Plaintiff's sons, Michael Martinez, at 912 Faye Pl. N.E., Albuquerque, New Mexico. After Mr. Valdez had loaded the vehicle onto the tow truck, Mr. Martinez got into the vehicle and drove it off the tow truck causing damage to the tow truck amounting to a felony property damage crime. Shortly thereafter, Defendants Barnard and Sedillo responded to a call at 912 Faye Pl. NE to investigate the felony property damage crime.

While Defendants Barnard and Sedillo were speaking to Mr. Valdez, the Plaintiff came out of her house and began walking towards her van.[1]  Mr. Valdez told Defendants Barnard and Sedillo that the Plaintiff was the mother of Mr. Martinez.  Defendant Barnard approached the Plaintiff and Defendant Sedillo continued to speak with Mr. Valdez.  Defendant Sedillo did not hear any of the conversation between Defendant Barnard and Plaintiff.

Defendant Barnard told the Plaintiff why he and Defendant Sedillo were there and what crime they were investigating.  Defendant Barnard informed the Plaintiff that her son was a suspect in the felony property damage crime.  Plaintiff stated that she did not know what was happening because she had been sleeping in her house.  Defendant Barnard then asked Plaintiff for her son's name, his date of birth, and his address.  The Plaintiff responded that she was not sure of her son's date of birth and she was not sure where he lived.[2]  These answers to Defendant Barnard's questions led Defendant Barnard to believe that the Plaintiff was breaking the law by withholding information pertinent to a criminal investigation.  Consequently, Defendant Barnard asked the Plaintiff for her identification.  The Plaintiff refused to produce her identification because she did not know anything about the crime and she believed she had not done anything illegal.  Defendant Barnard apparently gave Plaintiff several opportunities to produce her identification.

---

[1]Plaintiff's van was not the vehicle Mr Martinez had driven off of the tow truck.

[2]*See* Criminal Complaint, Plaintiff's Ex.1 (attached to Plaintiff's motion for summary judgment).  Defendant Barnard, however, testified at his deposition that Plaintiff stated that she did not know her son's date of birth or where he lived.  Ex. C at 26-28 (attached to Defendants' Response to Plaintiff's Motion for Summary Judgment Against Defendants Barnard and Sedillo on Counts II & IV [sic] of Plaintiff's First Amended [sic] Complaint to Recover Damages Resulting from a Deprivation of Civil Rights (Doc. No.26), filed Dec. 20, 2005).

At some point after Defendant Barnard had asked Plaintiff to produce her identification, the Plaintiff began walking towards her van and attempted to get into the van on the driver's side. Defendant Barnard prevented the Plaintiff from getting into the van and again asked Plaintiff for her identification. Plaintiff stated that her identification was in her purse which was in the house. Plaintiff then began walking towards the house. Defendant Barnard once again asked for Plaintiff's identification and the Plaintiff once more refused to produce her identification. Defendant Barnard then proceed to arrest Plaintiff, but Plaintiff resisted Defendant Barnard's attempt to place handcuffs on her wrists. Observing the difficulty Defendant Barnard was having in handcuffing the Plaintiff, Defendant Sedillo assisted Defendant Barnard in handcuffing her.

Plaintiff's Complaint to Recover Damages Due to Deprivation of Civil Rights and Violations of the New Mexico Tort Claims Act contains five Counts and alleges claims against the individual Defendants in their individual capacities. Count I is a Fourth Amendment excessive force claim brought against Defendants Barnard and Sedillo under 42 U.S.C. §1983. Count II is a Fourth Amendment wrongful arrest claim brought against Defendants Barnard and Sedillo under 42 U.S.C. §1983. Count III is a prosecution without probable cause claim apparently brought against all of the Defendants. Count IV contains battery and false imprisonment claims brought against all of the Defendants under state law, presumably under the New Mexico Tort Claims Act. Finally, Count V brings supervisory and municipal liability claims against Defendants Chavez, Gallegos, and apparently, the Defendant City of Albuquerque.

The Plaintiff argues in this motion for summary judgment that she is entitled to relief on Count II, the Fourth Amendment wrongful arrest claim, as a matter of law.[3] Specifically, Plaintiff argues that Defendants Barnard and Sedillo are not entitled to qualified immunity with respect to Count II.

B. Standard of Review

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir.1996) (citation omitted). The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of his or her pleadings. *Bacchus Indus., Inc.*, 939 F.2d at 891.

---

[3]Although Plaintiff has a section in her memorandum brief titled "WRONGFUL SEIZURE OF PLAINTIFF IN VIOLATION OF FOURTH AMENDMENT & New Mexico Tort Claim-False Imprisonment-COUNT II," Plaintiff's brief discusses only the alleged Fourth Amendment claim brought in Count II.

C. Discussion

To resolve a qualified immunity issue, the district court must first consider whether the plaintiff alleged a deprivation of a constitutional right. *See, e.g., Eden v. Voss*, 105 Fed. Appx. 234, 241 n.7 (10th Cir. 2004). Then, if the plaintiff has alleged a deprivation of a constitutional right, the district court must consider whether the plaintiff has shown that the constitutional right was clearly established at the time of the alleged violation. *Id*. However, without a constitutional violation, the defendant cannot be liable at all under §1983 regardless of whether the defendant can assert qualified immunity. *Id*. at 241. The first question then is whether the facts, when viewed in the light most favorable to Defendants Barnard and Sedillo, show that Defendants Barnard and Sedillo violated the Fourth Amendment by wrongfully detaining and arresting Plaintiff.

The Plaintiff argues first that Defendant Barnard had no reasonable suspicion to detain the Plaintiff when he first questioned Plaintiff about her son or when Defendant Barnard requested that Plaintiff produce her identification. Plaintiff further argues that Defendants Barnard and Sedillo had no probable cause to arrest the Plaintiff. Defendant Barnard argues, however, that he did not detain Plaintiff when he initially asked Plaintiff questions regarding her son. Defendant Barnard further argues that after Plaintiff answered his questions about Plaintiff's son's date of birth and residence in the manner that she did, he developed probable cause to conclude that Plaintiff was obstructing his investigation of the felony property damage crime in violation of NMSA 1978, §30-22-1(D)(1963)(resisting, evading or obstructing). Defendant Barnard also argues that he later had probable cause to arrest the Plaintiff for violating NMSA 1978, §30-22-3 (1963)(concealing an identity).

5

1.  Defendant Barnard's Initial Encounter with Plaintiff

"[T]here are three categories of police-citizen encounters: (1) consensual encounters which do not implicate the Fourth Amendment[;] (2) investigative detentions which are Fourth Amendment seizures of limited scope and duration and must be supported by a reasonable suspicion of criminal activity[;] and (3) arrests, the most intrusive of Fourth Amendment seizures and reasonable only if supported by probable cause." *United States v. Hill*, 199 F.3d 1143, 1147 (10th Cir. 1999), *cert. denied*, 531 U.S. 830 (2000)(citing *United States v. Shareef*, 100 F.3d 1491, 1500 (10th Cir. 1996)). Police questioning alone does not constitute a seizure. *Florida v. Bostick*, 501 U.S. 429, 434 (1991). For example, a police officer can ask for a person's identification, request consent to search bags, and generally ask questions of a person even if the officer has no basis for suspecting a particular individual of any wrongdoing "as long as the police do not convey a message that compliance with their requests is required." *Id*. at 435. However, "'[a]ccusatory, persistent, and intrusive' questioning can turn an otherwise voluntary encounter into a coercive one." *United States v. Little*, 60 F.3d 708, 712 (10th Cir. 1995). The Supreme Court "adhere[s] to the rule that, in order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Bostick*, 501 U.S. at 439.

Factors to be considered in determining whether an encounter was consensual include whether there was a use of force, an intimidating movement, an overwhelming show of force, the brandishing of weapons, the blocking of exits, threats, commands, or the use of an authoritative

6

tone of voice. *United States v. Drayton*, 536 U.S. 194, 204 (2002). Other factors include whether the police officer "advised the defendant he had the right to refuse consent" and "the particular location of the encounter." *United States v. Broomfield*, 201 F.3d 1270, 1274 (10th Cir.), *cert. denied*, 531 U.S. 830 (2000)(citing *Bostick*, 501 U.S. at 436-37. "No one factor is dispositive." *Id*. at 1274. Showing a badge, wearing a uniform, and being visibly armed, however, are factors with little weight in this analysis. *Drayton*, 536 U.S. at 204-05.

In this case, Defendant Barnard's initial encounter with Plaintiff involved his questioning Plaintiff about her son's date of birth and residence. The encounter occurred outside of Plaintiff's house with Defendant Sedillo and Mr. Valdez nearby. There is no evidence that Defendant Barnard acted in a coercive manner towards the Plaintiff. Viewing the evidence in the light most favorable to Defendant Barnard, a reasonable juror could find that the circumstances surrounding Defendant Barnard's initial questioning of Plaintiff about her son's date of birth and residence would have communicated to a reasonable person that the person was free not to answer Defendant Barnard's questions or to otherwise terminate the encounter with Defendant Barnard. Consequently, there is a genuine issue of material fact concerning whether the initial encounter between Plaintiff and Defendant Barnard was consensual and therefore not a "seizure" of the Plaintiff for Fourth Amendment purposes.

2. Defendant Barnard's Requests for Plaintiff's Identification and Plaintiff's Subsequent Arrest

Defendant Barnard argues that after Plaintiff answered his questions about her son in what Defendant Barnard believed was an evasive manner, he could ask for Plaintiff's identification because he had at that time developed probable cause to detain and later arrest Plaintiff for

7

violating §30-22-1(D)(obstructing a police officer). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Albright v. Rodriguez*, 51 F.3d 1531, 1536 (10th Cir. 1995)(citation omitted). The issue of probable cause in a civil rights lawsuit is most often a question of fact for the jury. *See DeLoach v. Bevers*, 922 F.2d 618, 623 (10th Cir. 1990).

Section 30-22-1(D) states that "[r]esisting, evading or obstructing an officer consists of: ... resisting or abusing any ... peace officer in the lawful discharge of his duties." Plaintiff argues that Defendant Barnard could not have had probable cause to conclude that Plaintiff was violating §30-22-1(D) by answering Defendant Barnard's questions about her son as she did because a violation of §30-22-1(D) requires inciting a breach of the peace by using "fighting" words or physical acts. To support this argument the Plaintiff cites to *State v. Frazier*, 88 N.M. 103, 537 P.2d 711 (Ct. App. 1975); *State v. Wade*, 100 N.M. 152, 667 P.2d 459 (Ct. App. 1983); and *State v. Prince*, 1999-NMCA-010, 126 N.M. 547.

In *Frazier*, the police were called to assist a motel owner in evicting the defendant for failure to pay her rent. Failure to pay rent is not a crime. The defendant ran from a police officer twice and resisted the police officer at which point the police officer arrested the defendant. The New Mexico Court of Appeals found that

> [t]he police officer was not in the lawful discharge of his duties in stopping and restraining the defendant for identification. Defendant was not acting in any manner to warrant the police officer to use force in order to detain her. There was no justified official intrusion upon the constitutionally protected interest of a private citizen. Her [physical] resistance did not provide probable cause for the arrest.

88 N.M. at 105, 537 P.2d at 713 (emphasis added). *Frazier* is distinguishable from this case in

8

that the issue there was whether the police officer lawfully discharged his duties by arresting defendant when the defendant was not committing a crime and there was no evidence of criminal activity.  Here, Defendant Barnard was lawfully discharging his duties because he was clearly investigating a crime when he approached Plaintiff with questions about her son.  Moreover, the issue in this case is whether Plaintiff's answers to Defendant Barnard's questions about her son constituted resisting or abusing a peace officer under §33-22-1(D), as opposed to whether any physical acts by Plaintiff prior to her arrest constituted resisting or abusing Defendant Barnard.

The New Mexico Court of Appeals held in *Wade* that abusing a peace officer under §33-22-1(D) covers speech by a citizen which consists of "fighting" words.  100 N.M. at 154, 667 P.2d at 461.  *Wade* is likewise distinguishable from this case because Defendant Barnard is not claiming that Plaintiff violated §33-22-1(D) by abusing him with "fighting" words.

In *Prince*, the New Mexico Court of Appeals explained that

> "Resisting, evading or obstructing an officer" primarily consists of physical acts of resistence.  In addition, Section 30-22-1(D) proscribes acts constituting "abuse of a police officer."  Abuse includes not only physical acts but "also refers to speech."

1999-NMCA-010 ¶15.  The New Mexico Court of Appeals observed that abusive speech is limited to "fighting" words used to incite a breach of the peace.  *Id*. at ¶17.  The New Mexico Court of Appeals, however, left open the question as to whether a citizen can violate §30-22-1(D) by verbally resisting, evading or obstructing a police officer.  *See id.* ("nothing in the record indicates that Defendant verbally resisted, evaded or obstructed [police officer] Cox.").  *Prince*, therefore, does not necessarily support Plaintiff's position that  §30-22-1(D) can only be violated when a person incites to breach the peace with "fighting" words or physical acts.

9

Viewing the evidence in the light most favorable to Defendant Barnard, I find that a reasonable police officer could have believed it was lawful to detain and subsequently arrest Plaintiff for obstructing an investigation under §30-22-1(D) by reason of the manner in which Plaintiff answered Defendant Barnard's questions regarding her son. Therefore, there is a genuine issue of material fact concerning whether Defendant Barnard reasonably believed that there was probable cause to detain and arrest Plaintiff based on a violation of §30-22-1(D). Furthermore, if Plaintiff was subject to a lawful detention or arrest for violating §30-22-1(D), Defendant Barnard could also lawfully insist that Plaintiff provide identification. *See Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt County*, 542 U.S. 177, 188 (2004)("A state law requiring a suspect to disclose his name in the course of a valid *Terry* stop is consistent with Fourth Amendment prohibitions against unreasonable searches and seizures.")

Defendant Barnard also presents an alternative argument in support his probable cause argument that Plaintiff was committing a crime when she answered his questions regarding her son's date of birth and residence in the way that she did. In *Devenpeck v. Alford*, 543 U.S. 146 (2004), the United States Supreme Court determined that "[a]s long as there is a criminal offense for which the known facts provide probable cause, it does not matter what offense the officer charges the arrestee with, or what the officer's subjective reason for making the arrest is." Michael Avery, David Rudovsky, and Karen Blum, *Police Misconduct: Law & Litigation* §2:8 (2005). In this case, Defendant Barnard argues that there was also probable cause to detain and arrest the Plaintiff for violating §12-2-19(D) of the Albuquerque Code of Ordinances. Section 12-2-19(D) provides that obstructing an officer consists of "[i]nterfering with, obstructing or opposing any officer in the lawful discharge of his regular and affixed duties." Section 12-2-

10

19(D) is not limited to physical obstruction or to just "fighting" words. The facts show that a reasonable police officer could have had probable cause to conclude that Plaintiff was obstructing an investigation under §12-2-19(D) by answering Defendant Barnard's questions about her son in the manner she did. Consequently, there is a genuine issue of material fact regarding whether Defendant Barnard reasonably believed that there was probable cause to detain or arrest Plaintiff for violating §12-2-19(D). Once again, if Defendant Barnard lawfully detained or arrested Plaintiff for violating §12-2-19(D), Defendant Barnard could likewise lawfully require that Plaintiff provide identification.

In addition, Defendant Barnard argues that he had probable cause to arrest the Plaintiff for violating §30-22-3 which states that it is a petty misdemeanor crime to conceal one's identity "to obstruct the due execution of the law or with intent to intimidate, hinder or interrupt any public officer or any other person in a legal performance of his duty or the exercise of his rights under the laws of the United States or of this state." "Section 30-22-3 requires a person to furnish identifying information immediately upon request or, if the person has reasonable concerns about the validity of the request, so soon thereafter as not to cause any 'substantial inconvenience or expense to the police.'" *State v. Dawson*, 1999-NMCA-072 ¶12, 127 N.M. 472 (citation omitted). In this case, Plaintiff refused several times to produce her identification prior to her arrest. Again, a reasonable officer could have concluded that he had probable cause to arrest Plaintiff for concealing her identity "with intent to intimidate, hinder or interrupt any public officer or any other person in a legal performance of his duty...." There is, therefore, a genuine issue of material fact as to whether Defendant Barnard reasonably believed that he had probable cause to arrest Plaintiff for violating §30-22-3.

11

Plaintiff argues, however, that Defendant Barnard nonetheless violated the Fourth Amendment because his request for Plaintiff's identification was unrelated to Defendant Barnard's investigation of Plaintiff's son. In *Hiibel*, the United States Supreme Court held that "an officer may not arrest a suspect for failure to identify himself if the request for identification is not reasonably related to the circumstances justifying the stop." 542 U.S. at 188. In other words, a police officer should not "obtain an arrest for failure to identify after a *Terry* stop yielded insufficient evidence." *Id*. at 189.

In *Hiibel*, the police officer was called to investigate whether a man was assaulting a woman in a red and silver GMC truck. *Id*. at 180. The police officer found a truck matching that description with the plaintiff, Larry Hiibel, standing by the truck and a woman sitting in the truck. *Id*. The police officer approached the plaintiff and explained that he was investigating a report of an assault. *Id*. The police officer then asked for the plaintiff's identification. *Id*. The plaintiff refused to give any identification indicating that he had done nothing wrong. *Id*. After the plaintiff refused to comply with several requests for identification, the police officer arrested the plaintiff and charged him with obstructing a police officer under state law by refusing to provide identification. *Id*. The United States Supreme Court found that the police officer's request for identification was "a commonsense inquiry, not an effort to obtain an arrest for failure to identify after a *Terry* stop yielded insufficient evidence." *Id*. at 189.

In this case, a reasonable juror could find that Defendant Barnard's request for identification occurred after Defendant Barnard reasonably believed or suspected that the Plaintiff was obstructing his duty to investigate the felony property crime. This request for identification appears to be similar to the police officer's request in *Hiibel* where the request for identification

12

came after the police officer had reasonable suspicion that the plaintiff may have been involved in the reported assault. Applying the reasoning in *Hiibel* to this case, I conclude that there is a genuine issue of material fact as to whether Defendant Barnard's request for Plaintiff's identification was reasonably related to the detention of Plaintiff for violating the obstruction laws, thereby providing probable cause to arrest Plaintiff for failing to produce identification.

Plaintiff also argues that an October 28, 1994 Inter-Office Correspondence from John DuBois, Acting Director of Public Safety Division, to Police Chief Joseph Polisar supports her argument that Defendant Barnard unlawfully arrested Plaintiff for refusing to provide identification. *See* Plaintiff's Ex. 4 (attached to Plaintiff's Motion and Memorandum in Support of Plaintiff's Motion for Summary Judgment Against Defendants Barnard and Sedillo on Count II of Plaintiff's Complaint to Recover Damages Resulting From a Deprivation of Civil Rights and the New Mexico Tort Claims Act). In this Inter-Office Correspondence, Mr. DuBois stated that "[t]he laws are not intended to permit an officer to compel an individual to identify himself, absent probable cause to arrest on independent charges." However, in *Albright*, the Tenth Circuit found that a police officer had probable cause to arrest a person for violating §30-22-3 without having probable cause to arrest that person on other independent charges. 51 F.3d at 1536-37. The 1994 Inter-Office Correspondence is, therefore, not helpful to Plaintiff.

Plaintiff also appears to argue that statutes like §30-22-3 are void for vagueness. The New Mexico Court of Appeals addressed the issue of whether §30-22-3 is void for vagueness. The New Mexico Court of Appeals noted that it had previously "rejected a contention that the word 'identify' in Section 30-22-3 is unconstitutionally vague." *Dawson*, 1999-NMCA-072 ¶22. Moreover, the New Mexico Court of Appeals rejected the defendant's assertion that §30-22-3 "is

13

unconstitutionally vague because it does not provide a time limit within which one must disclose one's identity." *Id*. Plaintiff's vagueness argument is not a basis for granting summary judgment on Count II.

Finally, Plaintiff seems to argue that Defendant Sedillo did not have any probable cause to arrest Plaintiff because he did not know why Plaintiff was being arrested. The law is clear that "[o]fficers may rely on information furnished by other law enforcement officials to establish reasonable suspicion and to develop probable cause for an arrest." *Albright*, 51 F.3d at 1536 (citations omitted). Viewing the facts in the light most favorable to Defendants Barnard and Sedillo, I conclude that a jury could find that Defendant Sedillo came to assist Defendant Barnard in arresting Plaintiff when Defendant Sedillo saw that Plaintiff was trying to avoid being handcuffed by Defendant Barnard. Consequently, a reasonable officer in Defendant Sedillo's position could have concluded that he had probable cause to arrest Plaintiff for violating §30-22-1(D). Thus, there is a genuine issue of material fact as to whether Defendant Sedillo had probable cause to assist in the arrest of Plaintiff.

In sum, the Plaintiff has failed to show that Defendants Barnard and Sedillo violated the Fourth Amendment in their dealings with the Plaintiff. Consequently, the Plaintiff is not entitled to summary judgment on Count II.

IT IS ORDERED that Plaintiff's Motion and Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment Against Defendants Barnard and Sedillo on Count II of Plaintiff's Complaint to Recover Damages Due to Deprivation of Civil Rights and the New

Mexico Tort Claims Act (Doc. No. 21) is denied.

_____
SENIOR UNITED STATES DISTRICT JUDGE

15